788 So.2d 410 (2001)
Huntley JOHNSON,
v.
Pamela THIGPEN and Johnson, Vipperman, etc.
Pamela Thigpen,
v.
Huntley Johnson, Ind. and Johnson, Vipperman & White, P.A.
Nos. 1D00-2040, 1D00-2282.
District Court of Appeal of Florida, First District.
July 9, 2001.
*411 Donald L. O'Dell, and Robert E. Bonner, of Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando, for Appellant/Cross-Appellee.
*412 Dyanne E. Feinberg, and Rosana E. Hernandez, of Gilbride, Heller & Brown, P.A., Miami, for Appellee/Cross-Appellant.
LEWIS, J.
We have before us an appeal from a jury verdict in favor of Appellee, Pamela Thigpen, against Appellant, Huntley Johnson, for the torts of assault, battery, false imprisonment and intentional infliction of emotional distress. We also have for review on cross-appeal the trial court's granting of a directed verdict and summary judgment on Cross-Appellant's, Pamela Thigpen's, various claims against Cross-Appellee, the law firm of Johnson, Vipperman & White, P.A. We affirm with an opinion addressing only the intentional infliction of emotional distress issue. We have carefully examined the record in light of the remaining arguments in this appeal and cross-appeal, and finding no error, we affirm without written opinion.
Johnson, an attorney, represented Thigpen in a matter related to her termination from the Department of Corrections. In June of 1996, Thigpen began working for Johnson. She continued to work for him until August of 1997. During her employment, Johnson engaged in conversations with Thigpen that were sexually explicit, demeaning and vulgar. For example, Johnson repeatedly told Thigpen: she just wanted to "get down on his hog and honk it"; "you want me to put my hog in your mouth"; "[c]ome in here and give me some head." He also told her, at least once, to give his client a "mercy fuck." Johnson also dictated to Thigpen while urinating in the bathroom in his office and left a nude picture of himself for Thigpen to find in his office. There was also evidence of inappropriate, unwelcomed physical contact, including repeated touching of Thigpen's breasts, running a pencil up Thigpen's thigh and an incident in which Johnson made sexually threatening remarks to Thigpen and forcibly placed her hand onto the crotch of his trousers. The trial court denied Johnson's motion for directed verdict on Thigpen's claim for intentional infliction of emotional distress finding that the pattern of Johnson's behavior was "beyond the standard required."
When determining the propriety of granting a directed verdict, an appellate court must determine whether the facts, when viewed in the light most favorable to the non-moving party, provided a prima facie case in support of its cause of action. Houghton v. Bond, 680 So.2d 514, 522 (Fla. 1st DCA 1996). All inferences of fact are to be construed strictly in favor of the non-movant. Regency Lake Apts. Assocs., Ltd. v. French, 590 So.2d 970 (Fla. 1st DCA 1991).
A cause of action for intentional infliction of emotional distress was recognized in Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985). In order to state a cause of action for intentional infliction of emotional distress, the plaintiff must demonstrate that: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe. Urquiola v. Linen Supermarket, Inc., 1995 WL 266582 (M.D.Fla.1995). In McCarson, the Florida Supreme Court relied on the definition of extreme and outrageous conduct set forth in Section 46, Restatement (Second) of Torts:
Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *413 Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
McCarson, 467 So.2d at 278-9. The issue of whether a plaintiff has met the requirements set forth above in a claim for intentional infliction of emotional distress is a question for the trial court to decide as a matter of law. Baker v. Florida Nat'l Bank, 559 So.2d 284 (Fla. 4th DCA 1990).
Our Court has long recognized a cause of action for intentional infliction of emotional distress. See Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979). Most recently, this Court reversed a dismissal of plaintiff's cause of action where the allegations that students produced and distributed a newsletter in which the author threatened to kill the plaintiff and rape all of her children constituted conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. See Nims v. Harrison, 768 So.2d 1198 (Fla. 1st DCA 2000).
The Florida Supreme Court has not ruled directly on the standard to apply for intentional infliction of emotional distress arising out of the workplace. However, in ruling that the workers' compensation statute does not bar an employee's claim for intentional infliction of emotional distress arising out of instances of sexual harassment in the workplace, the supreme court contemplated that a plaintiff might be able to proceed with such a claim based on facts similar to those in this case. See Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099, 1104 (Fla.1989) (to the extent that the claim alleges assault, intentional infliction of emotional distress arising from sexual harassment or the specific type of battery involved in this case, the exclusivity rule will not bar them because "these causes of action address the very essence of the policies against sexual harassmentan injury to intangible personal rights"). Byrd does not discuss the level of outrageousness needed to state a claim for intentional infliction of emotional distress based on workplace harassment.
While Florida state courts have allowed claims for intentional infliction of emotional distress in a wide variety of situations, they thus far have been hesitant to find sufficiently outrageous conduct based solely on alleged acts of verbal abuse in the workplace. See Ponton v. Scarfone, 468 So.2d 1009 (Fla. 2nd DCA 1985)(utterances designed to induce employee to join in a sexual liaison did not meet the threshold required to establish intentional infliction of emotional distress); see also Lay v. Roux Laboratories, 379 So.2d 451 (Fla. 1st DCA 1980)(allegations of threatening plaintiff with her job, and using humiliating language, vicious verbal attacks and racial epithets were insufficient to serve as a predicate for the independent tort of intentional infliction of emotional distress). These Florida state court cases, unlike the instant case, were based only on claims of alleged acts of verbal abuse and were not also based on claims of alleged repeated acts of offensive physical contact in the workplace. There are no Florida cases which suggest that the standard adopted in Metropolitan Life is inapplicable to, or more stringent as applied to, incidents of sexual harassment in the workplace. The viability of a claim for intentional infliction of emotional distress is highly fact-dependent and turns on the sum of the allegations in the specific case at bar. See Watson v. Bally Mfg. Corp., 844 F.Supp. 1533, 1537 (S.D.Fla. 1993).
With these principles in mind, federal courts interpreting Florida law have allowed *414 claims for intentional infliction of emotional distress in the workplace to go forward in circumstances involving repeated verbal abuse coupled with repeated offensive physical contact. See Vernon v. Medical Mgmt. Assoc. of Margate, Inc., 912 F.Supp. 1549, 1559 (S.D.Fla. 1996)("[t]he touchstone of these cases is the presence of relentless physical, as well as verbal, harassment. It is the element of offensive, non-negligible physical contact that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress."); Urquiola, 1995 WL 266582 (court denied motion to dismiss after noting that the allegations "went beyond mere harassment or verbal abuse." The alleged conduct included constant sexually explicit, demeaning and vulgar language accompanied by repeated acts of kissing, groping and other physical abuse); Albert v. National Cash Register Co., 874 F.Supp. 1328 (S.D.Fla.1994)(denying a motion to dismiss where plaintiff's allegations established a "pervasive pattern of constant harassment" based on her gender, race and religion); Stockett v. Tolin, 791 F.Supp. 1536, 1556 (S.D.Fla.1992)(sexual harassment, including repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated licentiousness, could be viewed cumulatively by an ordinary prudent person as outrageous).
In the instant case, Johnson used language that ordinary people would find to be obscene, lascivious, uncivilized and outrageous. In addition to Johnson's persistent acts of verbal abuse, there is evidence of repeated offensive, unwelcomed physical contact. Thus, the touchstone of this case, like the federal court cases which have allowed these claims to go forward, is the persistent verbal abuse coupled with the repeated offensive, unwelcomed physical contact. Based on the facts of this case, viewed in the light most favorable to Thigpen, we conclude that Thigpen provided a prima facie case that Johnson's workplace harassment of Thigpen was "Outrageous!" Therefore, the trial court correctly applied the law to Thigpen's claim of intentional infliction of emotional distress and did not err in denying the motion for directed verdict. Accordingly, we affirm on this issue.
Regardless of whether or not there was any error in denying Johnson's motion for directed verdict, Johnson is barred from appellate relief by the "two-issue rule." The two-issue rule provides:
[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced. The rule is based on the principle that reversal is improper where no error is found as to one of the issues that can independently support the jury's verdict. In Colonial Stores,[1] this Court cautioned that although it may seem that injustice might result from application of the "two-issue rule," the rule is an economical tool that limits appellate review to issues that actually affect the case and that litigants may avoid application of the rule by simply requesting a special verdict that would illuminate the jury's decision making process and the affect of any alleged error: "It should be remembered... that the remedy is always at the hand of counsel."
Barth v. Khubani, 748 So.2d 260, 261 (Fla. 1999) (citations omitted); see also Whitman *415 v. Castlewood Int'l Corp., 383 So.2d 618 (Fla.1980).
The key to applying the two-issue rule is whether each claim has a separate measure of damages. First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla.1987). The two-issue rule applies where the finding of liability on one claim entitles the plaintiff to receive the total amount of damages attributable to both theories of liability. First Interstate, 511 So.2d at 538.
In the instant case, the general verdict form which was submitted to the jury without objection from Johnson included separate claims for intentional infliction of emotional distress, assault, battery and false imprisonment. However, the general verdict form did not have separate measures of damages for each of the four causes of action. Thus, it is not possible to determine from the general verdict form the amount of the award of damages, if any, that was attributable only to the claim for intentional infliction of emotional distress. Thigpen would have been entitled to the same measure of damages based on her three other tort claims. The claim of error raised by Johnson as to the cause of action of intentional infliction of emotional distress cannot be the basis for reversal where three additional causes of action were presented to the jury and on which the jury found in favor of the Appellee. Therefore, in the absence of an objection to the use of the general verdict form, reversal is improper because Johnson is unable to demonstrate prejudice where no error is raised on appeal as to the three other causes of action submitted to the jury. Consequently, it is appropriate to apply the two-issue rule in this instance. Thus, even if there had been error in denying Appellant's motion for directed verdict, reversal on appeal would be improper. See Barth, 748 So.2d at 261; Whitman, 383 So.2d at 619.
AFFIRMED.
BOOTH and BENTON, JJ., Concur.
NOTES
[1] Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla.1977).