949 So.2d 1054 (2006)
Cynthia MATSUMOTO, Appellant,
v.
AMERICAN BURIAL AND CREMATION SERVICES, INC., a Florida corporation, d/b/a Larry Taylor Funeral and Cremation Services; Larry D. Taylor, Individually; Tommie Cooke; and Lenard Chavis, Appellees.
No. 2D06-1299.
District Court of Appeal of Florida, Second District.
December 20, 2006.
Rehearing Denied January 29, 2007.
*1055 H. Vernon Davids of H. Vernon Davids, P.A., Port Charlotte, for Appellant.
Glenn N. Siegel of Glenn N. Siegel, P.A., Port Charlotte, for Appellees American Burial and Cremation Services, Inc., d/b/a Larry Taylor Funeral and Cremation Services, and Larry D. Taylor.
David K. Oaks of David K. Oaks, P.A., Punta Gorda, for Appellee Tommie Cooke.
Kurt E. Lee of Kurt E. Lee, PL, Sarasota, for Appellee Lenard Chavis.
LaROSE, Judge.
Cynthia Matsumoto appeals a directed verdict entered in favor of American Burial and Cremation Services, Inc., d/b/a Larry Taylor Funeral and Cremation Services, Larry Taylor, individually, Tommie Cooke, *1056 and Lenard Chavis.[1] The trial court determined, as a matter of law, that the appellees' alleged conduct was not outrageous. We affirm.
Ms. Matsumoto sued the appellees in June 2003, claiming that they tortiously interfered with the body of her deceased father, Lenzo Chavis. Her pleading and her trial theme more accurately reflect a tort claim for outrageous conduct causing severe emotional distress. See, e.g., Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So.2d 163 (Fla. 2d DCA 1985) (acknowledging Florida's recognition of tort of intentional infliction of emotional distress caused by extreme and outrageous conduct in handling of cremation); Williams v. City of Minneola, 575 So.2d 683, 690-91 (Fla. 5th DCA 1991) (holding that cause of action lies in tort for infliction of emotional distress by outrageous conduct involving dead body); Baker v. Fla. Nat'l Bank, 559 So.2d 284, 287 (Fla. 4th DCA 1990) (recognizing that claim for intentional infliction of emotional distress and "tort of outrageous conduct" are the same claim).
By way of background, we observe that Lenzo Chavis died on January 3, 2003, at a Florida hospice. Ms. Matsumoto and her father were estranged and had not been in contact for over two years. Consequently, she knew nothing of her father's illness or his hospice stay. On the night of Lenzo Chavis's death, his companion, Tommie Cooke, authorized the funeral home to cremate the remains. Ms. Cooke held a general power of attorney that Lenzo Chavis had executed in Virginia more than a year earlier. Lenzo Chavis's brother, Lenard, arrived in Florida the next day. He, too, authorized cremation. Although Ms. Matsumoto testified that her father wanted a military funeral and burial, Ms. Cooke and Lenard Chavis testified that Lenzo Chavis had more recently directed each of them to cremate his remains. Ms. Cooke and Lenard Chavis each advised the funeral home that Lenzo Chavis had a surviving daughter but they did not know where she lived, how to contact her, or her married name.
Relying on the authorization from Ms. Cooke and Lenard Chavis, the funeral home cremated Lenzo Chavis's remains on January 14, 2003. At the direction of Ms. Cooke, the funeral home sent the ashes to Lenard Chavis in Georgia, where he scattered them on the grave of Lenzo Chavis's mother.
Ms. Matsumoto's lawsuit went to jury trial in early 2006. At the close of her case-in-chief, the appellees moved for and obtained a directed verdict and dismissal on the ground that their conduct was not outrageous.
Conduct claimed to cause severe emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Ponton v. Scarfone, 468 So.2d 1009, 1011 (Fla. 2d DCA 1985) (quoting Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla.1985)). The subjective response of the person affected by the conduct does not control. Rather, the conduct must be evaluated on an objective basis to determine whether it is "atrocious, and utterly intolerable in a civilized community." Id. That determination is a question of law. Id.; De La Campa v. Grifols Am., Inc., 819 So.2d 940, 943 (Fla. 3d DCA 2002); Johnson v. Thigpen, 788 So.2d 410, 413 (Fla. 1st DCA 2001); Williams, 575 So.2d at 691; Baker, 559 So.2d at 287.
*1057 The trial court correctly concluded that, viewed in the light most favorable to Ms. Matsumoto, her evidence did not show the kind of behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Although it is not necessary to detail all of the evidence adduced at trial, we agree that the trial court properly entered a directed verdict in favor of the appellees.
We also hold that the funeral home, in proceeding with the cremation, satisfied the requirements of section 470.002(18), Florida Statutes (2002). That section specifies the priority for persons who may direct the disposition of the deceased's body:
"Legally authorized person" means, in the priority listed, the decedent, when written inter vivos authorizations and directions are provided by the decedent, the surviving spouse, . . . a son or daughter who is 18 years of age or older, a parent, a brother or sister 18 years of age or over, a grandchild who is 18 years of age or older, or a grandparent; or any person in the next degree of kinship . . . or a friend or other person not listed in this subsection who is willing to assume the responsibility as authorized person.
With no other person available to direct the funeral home on how to proceed, Lenard Chavis, the deceased's brother, was authorized to direct the disposition of his brother's body.[2] Even if we accepted Ms. Matsumoto's claim that Ms. Cooke and Lenard Chavis knew how to contact her upon her father's death, our record offers no reason to think that the funeral home had such knowledge. An authorized family member directed the funeral home to cremate Lenzo Chavis. Both Ms. Cooke and Lenard Chavis told the funeral home that they did not know where Ms. Matsumoto was or how to contact her. Our record contains no evidence suggesting that the funeral home had any reason to doubt that information.
Ms. Matsumoto claims that the funeral home should have done more. She urges us to graft upon the statute a requirement that the funeral home undertake a diligent search for the closest next of kin if their whereabouts are unknown by those lower in priority under the statute. She suggests that the funeral home must make a good faith effort, similar to that required for constructive service of process, to locate the unavailable next of kin. See § 49.041(1), Fla. Stat. (2002). The statute does not impose a due diligence requirement on funeral homes. Nor does it require funeral homes to provide others with higher priority notice of a family member's death. We decline to impose such obligations on the funeral home.
The legislature amended section 470.002(18) in 1992, 1996, and 1998, each time broadening the scope of priority upon which the funeral home can rely in relation to the disposition of remains. See ch. 92-149, § 133, at 1467, Laws of Fla.; ch. 96-355, § 1, at 2040, Laws of Fla.; ch. 98-298, § 1, at 2641, Laws of Fla.[3] The funeral *1058 industry is heavily regulated by the State. The applicable statutes dictate the duties of funeral homes. Any decision to enlarge those statutory obligations lies with the legislature. State v. Jett, 626 So.2d 691, 692 (Fla.1993).
Affirmed.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] For convenience, we will refer to American Burial and Cremation Services, Inc., and Larry Taylor collectively as "the funeral home."
[2] Ms. Matsumoto argues that Ms. Cooke could not authorize cremation because her Virginia power of attorney was invalid under Florida law. We need not resolve this issue because the validity of the power of attorney is irrelevant. On the day after his brother's death, Lenard Chavis, a family member within the statute's priority list, authorized the cremation.
[3] The legislature repealed chapter 470, effective October 1, 2005. See ch. 04-301, § 158, at 2103-04, Laws of Fla. The legislature consolidated regulation of the funeral industry into chapter 497 and created in the Department of Financial Services the Board of Funeral, Cemetery, and Consumer Services. Id. at 1935. The legislature expanded the definition of "legally authorized person" further under section 497.005(39). Id., § 6, at 1944-45.