NORTHCUTT, Judge.
Trinity Memorial Cemetery disinterred the body of Adam Kellerman-Pate at the request of his mother, Joni Pate, and sent it for reburial in Texas, where Ms. Pate resided. The removal of Adam’s body was done without the knowledge or permission of his widow, Priscilla Mellette. She sued Trinity for damages based on theories of tortious interference with a dead body and reckless infliction of emotional distress. On Trinity’s motion, the circuit court entered summary judgment in its favor. We reverse and remand for further proceedings.
The discovery depositions taken in this case reflected that in 2002 Adam died in a *1045 car accident at the age of twenty-one. He was survived by his wife of several months, Priscilla, who was injured in the accident. Adam’s mother purchased a plot at Trinity, and he was buried there. Shortly after the burial, Ms. Pate told Priscilla that she wanted to move Adam’s body to Texas if Priscilla remarried. Priscilla said that she would consider this request if Ms. Pate would continue to maintain the plot and headstone at Trinity as a memorial to Adam. Ms. Pate refused, whereupon Priscilla told her that she would not consent to moving the body.
Priscilla remarried in December 2005, and thereafter she received several letters from Ms. Pate and other family members seeking permission to rebury Adam’s body in Texas. Priscilla ignored the requests. In mid-January 2008, she telephoned Trinity and told its representative, Diane Say-egh, that she feared Ms. Pate would attempt to have Adam’s body disinterred and moved to Texas. Sayegh assured her that the body could not be moved without the signatures of both the spouse of the decedent and the owner of the burial plot. Priscilla told Sayegh not to permit a disinterment, and she left a telephone number where she could be reached if anything transpired.
When Priscilla next spoke to Sayegh, in late February 2008, Sayegh informed her that Adam’s body had been disinterred and shipped to Texas. Sayegh transferred Priscilla to Timothy Schurdell, the family service advisor at Trinity who had handled the disinterment. Schurdell advised Priscilla that her late husband’s body had been removed on January 30 at the request of Ms. Pate, who owned the plot and who, Schurdell asserted, was the next of kin with rights to the body. He told Priscilla that she had not been contacted because she had no rights to the body.
In deposition testimony, Trinity’s president, Lewis Friedland, acknowledged that he knew Florida law required the next of kin’s approval of a disinterment and that Trinity’s files reflected that Priscilla was Adam’s next of kin. However, no one consulted the files before proceeding with the disinterment. When Ms. Pate made her request, Schurdell followed Trinity’s procedure in effect at the time; he simply filled out the disinterment form identifying Ms. Pate as the owner of the burial plot, erroneously believing her to be next of kin.
Friedland conceded that it was an error not to obtain Priscilla’s approval. He acknowledged that Schurdell’s mistake was compounded by his failure to consult the original interment file, the funeral director’s failure to confirm the next of kin on the form, and another employee’s failure to ensure that appropriate policies and procedures were in place. Friedland admitted that the form Trinity used for disin-terments did not require the signatures of both the plot owner and the statutory next of kin.
On Trinity’s motion, the circuit court entered summary judgment in its favor on both counts of Priscilla’s complaint. A court may grant a summary judgment only when the record shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Sherry v. Regency Ins. Co., 884 So.2d 175, 177 (Fla. 2d DCA 2004) (citing Roll v. Talcott, 191 So.2d 40 (Fla.1966)). Our review of a summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). In this case, the facts surrounding the disinterment are not seriously disputed. The issue is whether those facts cannot support Priscilla’s causes of action as a matter of law, thereby warranting summary judgment in Trinity’s favor.
*1046 There is no question that the disinterment in this case violated Florida law. Section 497.384(3), Florida Statutes (2007), provides that a disinterment must be authorized in writing by “a legally authorized person or a court of competent jurisdiction.” When Trinity disinterred Adam’s body in January 2008, “legally authorized person” was in pertinent part defined as follows:
“Legally authorized person” means, in the priority listed, the decedent, when written inter vivos authorizations and directions are provided by the decedent; the surviving spouse, unless the spouse has been arrested for committing against the deceased an act of domestic violence as defined in s. 741.28 that resulted in or contributed to the death of the deceased; a son or daughter who is 18 years of age or older; a parent; a brother or sister who is 18 years of age or older; a grandchild who is 18 years of age or older; a grandparent; or any person in the next degree of kinship....
§ 497.005(37), Fla. Stat. (2007) (emphasis supplied).[1] Thus, under the circumstances of this case Trinity was not permitted to remove the body without Priscilla’s written permission. Nevertheless, the circuit court determined that Trinity’s conduct “was not so outrageous as to rise to the level of outrageousness necessary to sustain a claim for the infliction of emotional distress or tortious interference with a dead body.” As we will explain, we disagree.
A. Tortious interference with a dead body.
The Florida Supreme Court recognized a cause of action for tortious interference with a dead body in Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla.1950). In that case, the court held that the impact rule, precluding recovery for mental pain and anguish unconnected to a physical injury in negligence eases, did not extend to cases where the wrongful act is such as to reasonably imply malice or where, “from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others,” malice justifying exemplary damages will be imputed. Id. (citing 15 Am.Jur., Damages, § 179; Restatement of Torts § 47(b)). Further, the court wrote:
The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it.
Id. In Gonzalez v. Metropolitan Dade County Public Health Trust, 651 So.2d 673, 676 (Fla.1995), the supreme court declined to expand the tort to encompass merely negligent conduct. It reaffirmed the Kirksey court’s holding requiring a showing of physical injury or willful and wanton conduct.
In this case, Priscilla has not claimed a physical injury. Accordingly, to warrant summary judgment, Trinity was required to establish that its admitted misconduct was not willful or wanton as a matter of law.
We have found no Florida case involving a cemetery’s improper disinterment of a body. But we note that Kirksey involved a funeral home’s unlawful withholding of a *1047 child’s body from its mother as security for its embalming fee. The court observed:
It is well settled that, in the absence of testamentary disposition to the contrary, a surviving spouse or next of kin has the right to the possession of the body of a deceased person for the purpose of burial, sepulture or other lawful disposition which they may see fit. And the invasion of such right by unlawfully withholding the body from the relative entitled thereto is an actionable wrong, for which substantial damages may be recovered.
Kirksey, 45 So.2d at 189-90 (citations omitted). Certainly, a surviving spouse’s right to direct the disposition of her deceased’s body is no less invaded when the party to whom she has entrusted the body disinters it and ships it out of state without her knowledge and against her expressed wishes.
Several cases involving improper actions by a funeral home when preparing a body for viewing are also analogous. In Sherer v. Rubin Memorial Chapel, Ltd., 452 So.2d 574 (Fla. 4th DCA 1984), the circuit court dismissed Sherer’s suit for damages based on the mishandling of a corpse. That theory is materially identical to the tort involved here, in that a plaintiff pursuing either cause of action must prove willful, wanton, or malicious behavior by the defendant. See id. at 575. In Sherer the defendant funeral home’s employees dressed another body in the decedent’s clothes and placed it in her casket for an open-casket funeral. When the decedent’s relatives discovered the error, the employees first tried to convince them that the body was actually their loved one. After the employees finally admitted their mistake, they placed the decedent’s unprepared corpse in the casket and simply threw her clothes on top of the body. Id. at 574. Applying Kirksey, the district court reversed the dismissal of the complaint.
In a similar case alleging tortious interference with a dead body, Halpin v. Kraeer Funeral Homes, Inc., 547 So.2d 973 (Fla. 4th DCA 1989), the court reversed a summary judgment in favor of the funeral home where, again, the wrong body was placed in a casket for a viewing. The employees in that case also attempted to convince the mourners that the stranger’s body was their decedent, and when the employees finally found the correct body and placed it in the casket, its appearance was unsatisfactory. The court pointed out that whether the plaintiff was entitled to damages based on these facts was a matter for a jury to decide. Id. at 978.
Whereas in Sherer and Halpin the funeral homes mishandled the corpses by misplacing them, Trinity mishandled Adam’s body by intentionally removing it from its resting place and sending it to another state — even though Priscilla had expressly voiced her opposition and Trinity had vouched that it could not be done without her signature. Indeed, Florida law forbade Trinity to disinter the body without Priscilla’s written authorization. Yet, its standard form for disinterments did not even call for the signature of the deceased’s next of kin, and Trinity proceeded to remove the body and transport it away without even informing her. We cannot conclude as a matter of law that Trinity’s conduct did not exhibit an “entire want of care of attention to duty” or was not so wanton as to render it liable for intentionally interfering with a dead body.
On this count, Trinity was not entitled to summary judgment as a matter of law. Accordingly, we reverse the summary judgment entered in favor of Trinity on Priscilla’s cause of action for tortious interference with a dead body.
*1048 B. Reckless infliction of emotional distress.
The facts supporting this cause of action are essentially the same as the ones supporting Priscilla’s claim for tor-tious interference with a body. This tort is grounded on “outrageous conduct causing severe emotional distress.” Dominguez v. Equitable Life Assurance Soc’y of U.S., 438 So.2d 58, 59 (Fla. 3d DCA 1983), approved by Crawford & Co. v. Dominguez, 467 So.2d 281 (Fla.1985). A plaintiff seeking recovery under this theory must prove that the defendant acted recklessly and that his conduct was extreme and outrageous. Johnson v. Thigpen, 788 So.2d 410, 412 (Fla. 1st DCA 2001).
Outrageous conduct is that which goes “beyond all bounds of decency” and is “regarded as odious and utterly intolerable in a civilized community.” Gallogly v. Rodriguez, 970 So.2d 470, 471 (Fla. 2d DCA 2007) (quoting LeGrande v. Emmanuel, 889 So.2d 991, 994-95 (Fla. 3d DCA 2004)). In a context similar to the one at issue here, the court in Williams v. City of Minneola, 575 So.2d 683, 691 (Fla. 5th DCA 1991), remarked:
As for what is outrageous or reckless and what is not, we emphasize that our society ... shows a particular solicitude for the emotional vulnerability of survivors regarding improper behavior toward the dead body of a loved one, and the special deference paid by courts to family feelings where rights involving dead bodies are concerned is central to our decision. This area is unique, and once it is entered, behavior which in other circumstances might be merely insulting, frivolous, or careless becomes indecent, outrageous and intolerable.
(footnote omitted).
We recognize that the question of whether conduct is in fact outrageous is one of law that a circuit court may decide on summary judgment. Liberty Mut. Ins. Co. v. Steadman, 968 So.2d 592, 595 n. 1 (Fla. 2d DCA 2007). But we review the circuit court’s decision in this regard de novo, and we cannot say that as a matter of law Trinity’s conduct did not reach the level of outrageousness required to support this tort. Two cases from this district involving cremation illustrate what acts can constitute outrageous conduct in the unique context described in Williams.
This court upheld a directed verdict in favor of a cremation service in Matsumoto v. American Burial & Cremation Services, Inc., 949 So.2d 1054 (Fla. 2d DCA 2006). In that case the decedent’s brother and the decedent’s companion, who held his power of attorney, directed the defendant funeral home to cremate the body. Both of them advised the funeral home that the decedent had an estranged daughter, but neither of them knew her married name, where she lived, or how to contact her. The funeral home cremated the body and delivered the ashes to the decedent’s brother, who scattered them on their mother’s grave. Id. at 1056.
Upon learning of her father’s death and cremation, the decedent’s daughter sued the funeral home for interference with the body. The daughter claimed that her father had wanted a military funeral and burial, but her father’s companion and his brother testified that the decedent had more recently directed each of them to have his remains cremated. The funeral home moved for and was granted a directed verdict and a dismissal on the ground that its conduct was not outrageous. Id.
On appeal, we remarked that the daughter’s claim was more accurately couched as one for outrageous conduct causing severe emotional distress. We also pointed out that whether conduct is sufficiently odious to support the tort must be evaluated ob *1049 jectively; the subjective feelings of the person affected by the conduct is not controlling. Id. Further, the funeral home had followed statutory dictates when permitting the decedent’s brother to direct the disposition because no other person was available to tell the funeral home how to proceed.[2] The daughter presented no evidence that the funeral home had any reason to doubt the information provided by the decedent’s companion or his brother. Under those circumstances, we held, the funeral home’s conduct was not outrageous, and the court properly dismissed the suit. Id.
In contrast to the Matsumoto case, this court affirmed a jury’s determination that a cremation society had acted outrageously in Smith v. Telophase National Cremation Society, Inc., 471 So.2d 163 (Fla. 2d DCA 1985). Smith had arranged for the society to cremate his body after his death. When his widow came to collect his ashes, the defendant’s business manager at first was unable to locate them, but after excusing herself she returned with an unlabeled plastic container and represented that it held Smith’s ashes. Mrs. Smith embarked on a trip to scatter the ashes in places that had been significant to the deceased. In the course of that endeavor she discovered a partial bridge among the ashes in the container. Her late husband had not had bridge work. The cremation society had given Mrs. Smith the ashes of another deceased person because it had scattered her husband’s ashes at sea, apparently in direct contravention of his wishes. Id. at 165-66.
On appeal, the cremation society challenged the trial court’s refusal to direct a verdict on Mrs. Smith’s claim for intentional infliction of emotional distress. We discussed the requirement that the conduct necessary to support that cause of action had to exceed all possible bounds of decency. Relying on the Restatement of Torts, we specifically noted that in determining whether conduct was outrageous, we looked to whether the recitation of facts was such that an average member of the community would exclaim “outrageous!” Id. at 166 (quoting Restatement (Second) of Torts § 46 (1965)). Against that standard, we could not say that the evidence in the case did not support the jury’s finding in favor of Mrs. Smith.
Likewise, here we cannot conclude as matter of law that Trinity’s conduct in disregard both of the statute governing disinterment and of the expressed wishes of the deceased’s widow was insufficiently condemnable to support her cause of action. Moreover, because the outrageousness test is objective, it is of no moment that Priscilla testified that she did not believe Trinity meant to hurt her. Therefore, we must reverse the summary judgment entered in favor of Trinity on this count of Priscilla’s complaint.
Reversed and remanded for further proceedings.
DAVIS and VTLLANTI, JJ„ Concur.

. The statutory definition has since been revised and renumbered as section 497.005(39), Florida Statutes (2010). As between the decedent’s surviving spouse and the decedent’s parent, the priority remains the same.

. The statute defining a "legally authorized person” was then section 470.002(18), Florida Statutes (2002).