**Jennifer McGINITY, Plaintiff,**

v.

**TRACFONE WIRELESS, INC., Defendant.**

**Case No. 6:13–CV–1214–ORL–22KRS.**

United States District Court, M.D. Florida, Orlando Division.

Signed March 11, 2014.

---

Amanda J. Allen, William Peerce Howard, Morgan & Morgan, PA, Tampa, FL, for Plaintiff.

Aaron S. Weiss, Avi Robert Kaufman, Carlton Fields, PA, Miami, FL, for Defendant.

## ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court on Defendant TracFone Wireless, Inc.'s ("Defendant") Motion to Dismiss (Doc. No. 17), in response to which Plaintiff Jennifer McGinity ("Plaintiff") filed a Memorandum in Opposition (Doc. No. 22). With leave of Court, Defendant filed a Reply in support of its Motion (Doc. No. 28). Based on the reasoning contained herein, the Motion will be granted.

## I. BACKGROUND

Plaintiff alleges that she purchased a cell phone from Defendant on or about February 15, 2013, and thereafter called the provided telephone number to activate it. (Compl. (Doc. No. 1) ¶ 15.) "Upon activating her phone," Plaintiff allegedly spoke with an employee of Defendant, Ulwin Mundy ("Mundy"), who allegedly told Plaintiff that "she needed to send $400.00 to him [Mundy]." (Compl. ¶ 16.) Apparently in this same call, Mundy stated that Plaintiff's "whole family would be killed if Plaintiff did not send him money" and Mundy "proceeded to give [Plaintiff] details on how he would kill her." (Compl. ¶ 17.) The Complaint further alleges that Mundy continued to call and harass Plaintiff, and "said he would not stop until Plaintiff gave him money." (*Id.*)

Plaintiff allegedly took several steps to stop these calls, including having her husband, a neighbor, and a law enforcement officer ask Mr. Mundy to stop, and calling Defendant multiple times. (Compl. ¶¶ 18–21, 24.) The harassing calls allegedly began on or about February 15, 2013 and continued "through March 2013." (Compl. ¶ 23.) In total, Plaintiff alleges that she "received approximately six thousand (6,000) calls from Defendant from February 2013 through March 2013." (Compl. ¶ 26.)

Plaintiff alleges three causes of action against Defendant: violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Count I) and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA") (Count II), and intentional infliction of emotional distress under Florida law (Count III).

## II. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir.2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed.R.Civ.P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

## III. ANALYSIS

### A. Violation of the TCPA

Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, in large part to curb "the proliferation of intrusive, nuisance calls to [consumers'] homes from telemarketers." Pub.L. No. 102–243, 105 Stat. 2394 at § 2(6) (1991). Although Defendant is not accused of telemarketing in this case, the statute was written broadly, and the portion relevant to Defendant provides the following:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or

**1340**

made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. . . .

47 U.S.C. § 227(b)(1). Pursuant to § 227(b)(3), a private person may bring an action based on a violation of the statute to enjoin such violation and/or for the greater of actual monetary losses or $500 per violation. Additionally, the court may treble the monetary or statutory damages if the violation was willful or knowing. *Id.*

To sustain a claim under the TCPA, Plaintiff must plausibly allege that Defendant used an "automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The Complaint does not allege that Defendant made calls using an artificial or prerecorded voice; to the contrary, Plaintiff claims that she spoke to Mundy, presumably a real person, on multiple occasions. However, the Complaint does include a factual allegation that "[e]ach call the Defendant made to the Plaintiff was made using an 'automatic telephone dialing system.'" (Compl. ¶ 12.) Defendant asserts that this pleading is facially implausible based on Defendant's understanding of an "automatic telephone dialing system," which the applicable statute defines as equipment which has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator[,] and to dial such numbers." 47 U.S.C. § 227(a)(1). Many district courts have held that "a 'bare allegation that [a defendant] used an [automatic telephone dialing system] is not enough.'" *Jones v. FMA Alliance Ltd.,* 978 F.Supp.2d 84, 85,

2013 WL 5719515, at *1 (D.Mass.2013) (footnote omitted) (quoting *Gragg v. Orange Cab Co., Inc.,* 942 F.Supp.2d 1111, 1113–14 (W.D.Wash.2013)); *see also Johansen v. Vivant, Inc.,* No. 12 C 7159, 2012 WL 6590551, at *3 (N.D.Ill. Dec. 18, 2012) ("It is not unreasonable . . . to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were prerecorded or delivered via the [automatic telephone dialing system]."); *Kramer v. Autobytel, Inc.,* 759 F.Supp.2d 1165, 1171 (N.D.Cal.2010) (stating the same legal principle, but finding that the plaintiff stated sufficient factual allegations to avoid dismissal).

■ Plaintiff fails to allege any facts tending to create an inference that the calls were made using an automatic telephone dialing system. In her response to the Motion to Dismiss, Plaintiff relies on her claim that Defendant called her 6,000 times in 45 days, or approximately once every eleven minutes throughout the entire 45–day period, to infer that an automatic dialing system must have been used. The 6,000 call claim seems rather implausible, and is not supported by any other factual allegations. It is also contradicted by the rest of Plaintiff's Complaint, which did not describe the content of any calls besides those in which Plaintiff (or someone else) spoke with Mundy. Use of an *automatic telephone dialing system is a* necessary element of a claim under the TCPA, so dismissal is required in the absence of a plausible inference that Defendant used such a system.

**B. Violation of the FCCPA**

■ Defendant asserts that the FCCPA claim should be dismissed because Plaintiff admits that she was not a debtor and failed to allege that Defendant was at-

tempting to collect a debt. A "debtor" under Florida Statute § 559.55(2) is "any natural person obligated or allegedly obligated to pay any debt." Plaintiff is not actually obligated to pay any debt to Defendant, but Plaintiff asserts that she was "allegedly obligated" to pay a debt under the statute because Defendant demanded that she "needed to send $400.00 to him" or else "her whole family would be killed." (Compl. ¶¶ 16–17.) The statute defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(1).

The Complaint does not allege, beyond a bare legal conclusion, that Plaintiff was allegedly obligated to pay a "debt." Plaintiff argues that it is enough to allege "that money was directly demanded by the Defendant's employee from the Plaintiff in this case." (Mem. Opp'n (Doc. No. 22) p. 5.) The statutory definition of "debt" plainly indicates that this is not so: a debt must be (1) an obligation or alleged obligation (2) of a consumer to pay money (3) arising out of a transaction (4) in which the property or services which are the subject of the transaction are primarily for personal, family, or household purposes. See Fla. Stat. § 559.55(1); see also Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 836–37 (11th Cir.2010) (per curiam) (discussing Fair Debt Collection Practices Act, but noting that its analysis also applies to the FCCPA because the "FCCPA definition of 'debt' is identical to that found in the FDCPA").

In this case, there are no factual allegations suggesting that Mundy demanded $400.00 in order to satisfy a debt. In contrast, Mundy's alleged demand is better characterized as the type of naked extortion more commonly found in a James Cagney film—"pay up, or you and your family are gonna get it!" Mundy may have obtained Plaintiff's number through his relationship with Defendant, but there are no factual allegations that would create an inference that Mundy's supposed threat "arose" out of Plaintiff's transaction with Defendant. Finally, even if Mundy's threat could be characterized as an attempt to collect a "debt," there are no allegations that would support an inference that either Plaintiff or Defendant believed that Plaintiff owed a debt. In the eyes of the parties to this suit, there was no "debt" and Plaintiff was not a "debtor." Accordingly, Plaintiff's FCCPA claim will be dismissed.

## C. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Florida law, Plaintiff must allege that "1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." Johnson v. Thigpen, 788 So.2d 410, 412 (Fla. 1st DCA 2001); Cf. Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278–79 (Fla.1985) (recognizing cause of action for intentional infliction of emotional distress in Florida). The "outrageous" conduct necessary to sustain a claim typically requires offensive physical contact. Williams v. Worldwide Flight Servs., Inc., 877 So.2d 869, 870 (Fla. 3d DCA 2004) (per curiam) (citation omitted). Whether a defendant's conduct satisfies the elements listed above is a question of law for the Court. Johnson, 788 So.2d at 413 (citation omitted).

In this case, Mundy's alleged conduct was not outrageous enough to sustain

a claim for intentional infliction of emotional distress. There are no allegations of physical contact, and the threats came over the phone from someone whom Plaintiff believed was located in another country. (Compl. ¶ 20.) Plaintiff cites *Nims v. Harrison* for support, but the facts in that case describe conduct that was significantly more outrageous. In *Nims*, a high school teacher successfully pleaded a claim for intentional infliction of emotional distress after two seniors at the teacher's high school published a newsletter that contained a passage insulting the teacher, targeting her with racial slurs, threatening to kill her, and threatening to rape her and her children. 768 So.2d 1198, 1199 n. 1 and accompanying text (Fla. 1st DCA 2000). The newsletter was circulated throughout the school. *Id.* Mundy's alleged threats, while vile, are not nearly as outrageous as those in *Nims*, nor as widely communicated or close to home. Under the facts presented here, the Court will not excuse the typical requirement of offensive physical contact for a claim of intentional infliction of emotional distress. Accordingly, this claim will be dismissed as well.

## D. Rule 11

Plaintiff may, if she is able, re-plead her TCPA claim in a manner that states a claim under the elements discussed above. In so doing, her counsel should take care to obey the letter and spirit of Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) requires an attorney to certify that "to the best of [his] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,*" the factual assertions in a pleading have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable discovery. Fed.R.Civ.P. 11(b) (emphasis added).

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant TracFone Wireless, Inc.'s Motion to Dismiss (Doc. No. 17), filed October 11, 2013, is **GRANTED.**

2. Count I of Plaintiff Jennifer McGinity's Complaint (Doc. No. 1), for violations of the Telephone Consumer Protection Act, is **DISMISSED without prejudice.** Plaintiff shall have leave until March 25, 2014 to file an amended complaint to rectify the pleading deficiencies identified in Count I. Failure to file an amended complaint on or before March 25, 2014, may result in dismissal with prejudice of this case without further notice.

3. Counts II and III of Plaintiff's Complaint, for violations of the Florida Consumer Collection Practices Act and intentional infliction of emotional distress, are **DISMISSED WITH PREJUDICE.**