382 So.2d 678 (1980)
Robert John POKORNY, Howard E. Shuping, and Mary Shuping, His Wife, Plaintiffs,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF LARGO, Florida et al., Defendants.
No. 53023.
Supreme Court of Florida.
April 3, 1980.
*679 John L. McFadyen of Lloyd & Henniger, St. Petersburg, for plaintiffs.
Thomas T. Steele of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for defendants.
ADKINS, Justice.
We have for consideration questions of law certified to us by the United States Court of Appeals, Fifth Circuit, in accordance with the provision of Rule 9.510, Florida Rules of Appellate Procedure, formerly Rule 4.61, Florida Appellate Rules (1962).
Pokorny, Shuping, and Shuping's wife, as plaintiffs, brought an action against the Federal Savings & Loan Association as defendant for causing an arrest. There was a verdict for the defense in the United States District Court and plaintiffs appealed. The United States Court of Appeals for the Fifth Circuit found that the case involved a question or proposition of the law of the state of Florida which was determinative of the cause and that there appeared to be no clear controlling precedents in the decisions of the appellate courts of the state of Florida. The statement of facts and the questions certified to us for consideration read as follows:

*680 STATEMENT OF FACTS
Robert John Pokorny, a deaf mute who was visiting Florida with another deaf mute friend, Howard Shuping, and who had been driven to the offices of First Federal Savings & Loan Association of Largo, Florida, by Shuping, allegedly for the purpose of obtaining a coin bag, entered First Federal's offices on March 13, 1973, and handed the teller a note which stated: "Please give me zipper bag". Upon receiving the note, the teller informed Pokorny that the savings and loan company had no zipper bags but that a commercial bank across the street had such bags. Pokorny then leaned toward her and put his hand on his ear, and the teller repeated in a louder voice that First Federal did not carry zipper bags but that he could obtain them from the commercial bank across the street. Pokorny then pointed to the note again, "hard". She again told him that First Federal had no zipper bags. Then Pokorny pointed toward the cash drawer. She looked at him and opened the cash drawer and looked back at him. He then pointed at the cash drawer again, and she "knew" it was a robbery.
Having decided that a robbery was in progress, the teller closed the cash drawer and decided to get some sort of bag to put the money in to give to Pokorny. She attempted to explain to him, "about three times", that she had to leave her window to get a bag, but he "kept pointing at the note again". She then left the window to obtain a bag and, as she left the window, she noticed that she was being watched intently by him. While kneeling at the cabinet to obtain the bag, she informed a co-worker that she thought she was being robbed. She returned to the window with a bag which had a lock on it, and she attempted to explain the problem to him, she then pressed a silent alarm, secured another bag, and returned to the window.
Upon returning to the window, the teller placed the bag on the counter-top and Pokorny then pulled back the note and wrote on it, "I will bring $2,500.00 of coin". She then told him that First Federal would be happy to take any coins that he brought, but Pokorny continued to stand at the window, pointing at the note and turning from side to side in a nervous-like manner. The teller told Pokorny several times that she did not understand what he wanted and, after several minutes, she saw a customer approach and decided to take action to avert having a bystander involved in a possibly dangerous situation. She opened the drawer and reached for the money bag, but Pokorny took the bag and walked away at a rapid pace. No weapon was ever displayed to the teller, although she testified that Pokorny kept one hand in his pants pocket most of the time.
Immediately after the incident with the teller, the F.B.I. was telephoned by First Federal and informed that an attempted robbery had taken place. Pokorny and Shuping were subsequently apprehended by two F.B.I. agents. They were hand-cuffed and were then transported to Tampa where they were detained for approximately one hour and then released. No charges were filed against them by either state or federal authorities.
Pokorny, Shuping, and Shuping's wife sued First Federal and its liability insurer for causing the arrest of Pokorny and Shuping, alleging that the actions of First Federal's employees had been "negligent, reckless or intentional misconduct." First Federal denied the material allegations, and the case was tried before a jury. Over the plaintiffs' objection, the jury was instructed that First Federal was not to be found liable if its teller had, in the light of the facts available to her at the time of the incident, acted reasonably in believing Mr. Pokorny was attempting to rob First Federal. The jury returned a defense verdict, and the plaintiffs appealed.
QUESTIONS FOR THE SUPREME COURT OF FLORIDA
1. Did the actions of the employees of the defendant, First Federal Savings and *681 Loan Association of Largo, Florida, constitute "direct procurement" of an arrest under the teachings of Johnson v. Weiner, 19 So.2d 699 (Fla. 1944), and its progeny?
2. Do the rules governing arrest and imprisonment by private citizens apply in this case?
3. If the rules governing arrest and imprisonment by private citizens are to apply in this case, is First Federal automatically liable in tort if, in fact, the plaintiffs did not commit a crime?
4. If the rules governing arrest and imprisonment by private citizens are to apply in this case, is First Federal automatically liable in tort if the plaintiffs demonstrate to the jury's satisfaction that no crime in fact occurred?
5. If in fact no crime had been committed, was the reasonableness of the conduct of the employees of First Federal material to a determination of liability? Put another way, is a private citizen, who in good faith and with probable cause believes a felony to have been committed by an identifiable person, nevertheless liable in tort for procuring the arrest of that person if a jury subsequently determines that no crime had been in fact committed?
Pokorny v. First Federal Savings & Loan Association of Largo, 563 F.2d 763, 765-66 (5th Cir.1977).
Plaintiffs argue that the defendant proximately caused the false imprisonment and unlawful detention of the plaintiffs and that the defendant is therefore liable. Defendant argues that the mere fact that a person's communication to an officer may have caused the victims' arrest did not make him liable when he did not in fact request any detention.
Plaintiffs rely primarily upon the case of Johnson v. Weiner, 155 Fla. 169, 172, 19 So.2d 699, 701 (Fla. 1944), where the Court said:
To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. All those who, by direct act or indirect procurement, personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor.
In Johnson v. Weiner, supra, the defendant had sworn out a warrant for the arrest of Jack Johnson and had subsequently erroneously pointed out the plaintiff as the perpetrator named in the warrant. The defendant in Johnson not only requested a warrant but also identified the plaintiff. This amounted to a "request" for an arrest and constituted more than merely supplying information to law enforcement officers or accusing another of a crime.
Washington County Kennel Club, Inc., v. Edge, 216 So.2d 512 (Fla. 1st DCA 1968), relied upon by plaintiffs, involved a situation where the plaintiffs were initially detained in the defendant's office against their will and were subsequently arrested by a deputy sheriff at the request and instigation of the defendant's agent. Applying the test of Johnson v. Weiner, supra, the Court held that the defendant was guilty of false imprisonment in two instances: By itself unlawfully detaining the plaintiffs and by requesting the unlawful arrest by the deputy sheriff. The action of the private citizen constituted far more than merely supplying information to law enforcement officers or accusing plaintiffs of a crime.
Plaintiff also cites Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721 (Fla.3d DCA 1977). In this case the Court held that a complaint stated a cause of action for false arrest where it alleged that the defendant hospital's employees detained plaintiff against his will and procured his arrest by law enforcement officers.
In the case sub judice, the defendant, First Federal Savings & Loan Association, did not detain the defendant. The agent of the defendant represented to the F.B.I. that an attempted robbery had occurred. Plaintiffs say that there was no attempted robbery, but based on the conclusion of the defendant's employees, the arrest was made. Plaintiffs urge that this clearly constitutes direct procurement of an arrest.
*682 Defendant relies upon a general rule that a private citizen may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers. See generally Annot. 21 ALR2d 643 (1952).
Some courts have consistently upheld the privilege of private citizens to provide, without fear of subsequent tort liability, information about suspected criminal activities to law enforcement officials, even where the information was mistaken, and the providing of such information constituted the principal cause of imprisonment. See Charles Stores Co. v. O'Quinn, 178 F.2d 372 (4th Cir.1949); Harris v. Barham, 35 N.C. App. 13, 239 S.E.2d 717 (1978).
Restatement (Second) of Torts, § 45A, Comment (c) (1965) contains the following:
[I]t is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.
In Manis v. Miller, 327 So.2d 117 (Fla.2d DCA 1976), the defendant, a private citizen, erroneously identified the plaintiff as the perpetrator of an armed robbery, leading to his arrest and imprisonment. In a subsequent tort suit brought by the mistakenly arrested suspect against the witness, the trial court awarded damages to the plaintiff despite the defendant's good faith. On appeal the district court of appeal reversed and held:
[T]he trial court committed reversible error in finding in its final judgment that Florida law imposes liability for false imprisonment upon a witness making an honest, good faith mistake in identifying a criminal suspect where the identification contributes to arrest and prosecution of the suspect.
327 So.2d at 118. In Manis the Court rested its decision upon the policy of encouraging private citizens to become involved in law enforcement:
Prompt and effective law enforcement is directly dependent upon the willingness and cooperation of private persons to assist law enforcement officers in bringing those who violate our criminal laws to justice. Unfortunately, too often in the past witnesses and victims of criminal offenses have failed to report crimes to the proper law enforcement agencies. Private citizens should be encouraged to become interested and involved in bringing the perpetrators of crime to justice and not discouraged under apprehension or fear of recrimination.
Id. at 117.
We hold that under Florida law a private citizen may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers. If the private citizen makes an honest, good faith mistake in reporting an incident, the mere fact that his communication to an officer may have caused the victim's arrest does not make him liable when he did not in fact request any detention. See 14 Fla.Jur. False Imprisonment § 5 (1957).
In the case sub judice, the evidence does not show that defendant's employees at any time detained either of the plaintiffs. Nor does the record show that the employees of defendant ever requested the F.B.I. to arrest either of the plaintiffs. The defendant's employees reported a possible attempted robbery and identified plaintiffs as the suspects. As long as the employees acted reasonably, their action did not constitute "direct procurement of an arrest" as set forth in Johnson v. Weiner, supra.
Defendant relies upon the cases of Camp v. Silas, 113 Fla. 323, 151 So. 706 (Fla. 1933), and Dodson v. Solomon, 134 Fla. 284, 183 So. 825 (Fla. 1938). The facts of these cases are distinguishable. However, these decisions are in conformity with the general principle that a private citizen, making an honest, good faith effort in reporting an incident, cannot be held liable in a case based upon false imprisonment or malicious prosecution unless it further appears that the defendant was personally involved in detaining the victim.
*683 Florida courts have never recognized a separate tort for "negligently" swearing out a warrant for arrest. Such cases may be brought only in the form of civil suits for malicious prosecution. See, e.g., City of Miami Springs v. Carr, 319 So.2d 184 (Fla.3d DCA 1975); Wilson v. O'Neal, 118 So.2d 101 (Fla. 1st DCA 1960), appeal dismissed 123 So.2d 677 (Fla. 1960), cert. den. 365 U.S. 850, 81 S.Ct. 813, 5 L.Ed.2d 814 (1961). A plaintiff contending that he had been improperly arrested as the result of negligence in swearing out a warrant must bear the burden of establishing malice and want of probable cause. Mere negligence alone is insufficient. Accordingly, if defendant's employees in the case sub judice had sworn out a warrant for the arrest of plaintiffs Pokorny and Shuping, and if an arrest had been effected pursuant to that warrant, the plaintiffs would have been unable to recover for mere negligence and would have been required to shoulder the elements of an action for malicious prosecution. The jury's decision that defendant's teller acted reasonably in believing Pokorny was guilty of the felony of attempting bank robbery would have been final on the elements of malice and probable cause.
We therefore hold that the actions of the employees of the defendant, First Federal Savings & Loan Association of Largo, Florida, did not constitute "direct procurement" of an arrest under the teachings of Johnson v. Weiner, supra. The first question is therefore answered in the negative.
Since the actions of the employees of defendant did not constitute "direct procurement" of the arrest of Pokorny and Shuping, and since they were arrested by law enforcement officers, the rules governing arrest and imprisonment by private citizens do not apply in this case. The second question is also answered in the negative.
Our answers to certified questions # 1 and # 2 obviously dispose of the case. Therefore we decline to reach answers to certified questions # 3, # 4, and # 5.
ENGLAND, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.