[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15337
_____

D. C. Docket No. 8:09-cv-02539-EAK-TGW

LARRY BORNEISEN,
SHERRY BORNEISEN,

Plaintiffs-Appellants,

versus

CAPITAL ONE FINANCIAL CORPORATION,
d.b.a. Capital One Bank,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 18, 2012)

Before HULL, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Plaintiffs Larry and Sherry Borneisen appeal the district court's summary judgment in favor of Defendant Capital One Financial Corporation ("Capital One") on the Borneisens' state-law civil claims for trespass, invasion of privacy, intentional infliction of emotional distress, assault, battery, false imprisonment, malicious prosecution, and abuse of process. After review of the record and with the benefit of oral argument, we affirm.

## I. BACKGROUND

### A. The Borneisens' Delinquent Accounts

Plaintiffs Larry and Sherry Borneisen each had two separate credit card accounts with Defendant Capital One. The Borneisens failed to make their minimum monthly payments on those accounts.

On April 12, 2008, Larry Borneisen received a call from Capital One about his delinquent accounts. Larry Borneisen demanded that Capital One cease calling him and alleged that the Capital One representative responded that Capital One would call "as many times per day as wanted" and would call "all day every day until you pay this." Larry Borneisen did not dispute that he owed Capital One the amount it sought to collect from him.

### B. Larry Borneisen's Threatening Phone Call

2

Five minutes after receiving the call from Capital One, Larry Borneisen called Capital One's customer call center in Virginia. The call was transferred to Alexandria Wilson, a "Risk Specialist" at the call center. This phone call was not recorded, and the course of the conversation between Wilson and Larry Borneisen is the subject of some dispute. However, the following details are not disputed.

Wilson first verified Larry Borneisen's identity. At one point during the call, Larry Borneisen said to Wilson, "What, you dumb bitch, . . . you think I don't know where Glen Allen, Virginia, is?" In his deposition, Borneisen admitted that he said this to Wilson, and he explained that he knew where Glen Allen, Virginia was "[b]ecause I grew up there. My first apartment was right next door." In his deposition, Borneisen also admitted asking Wilson, "What do I got to do, come up there and put my foot in your ass for you to stop calling me 8, 10 times a day?"

In her contemporaneous notes from the phone call, Wilson noted that Borneisen threatened to "walk into Glen Allen and shoot everybody in there and stated that he is not paying" on his account. In a written statement prepared the same day, Wilson summarized the call, and Larry Borneisen's threats, as follows:

> Primary card holder called around 12:00 pm noon on 04/12/2008 and stated that we continue to call him and we need to stop because he is not making a payment on the account that he has with Capital One. He proceeded to talk about this lump sum of money that he was getting from his previous employer and that he could leave the states and that

3

he could buy Capital One.  Card holder started to curse at me, [I] informed him that I would disconnect the call if he continued[.]  I was called every name but my name [and] then he stated that <u>he knew where Glen Allen was located and that he was going to blow the place up</u>.

(emphasis added).

About 40 minutes after receiving Larry Borneisen's threatening phone call, Wilson reported to her supervisor that an upset customer had threatened to blow up the call center.[1]  Wilson's supervisor recalled that Wilson was worried about the call because "she didn't know what [Borneisen] would be capable of." Wilson's supervisor duly notified Capital One's security personnel of the threat, and, pursuant to Capital One's policy for handling threatening phone calls, security personnel informed the local police department.

## C. Local Police Investigation

Corporal David E. Ford of the Chesterfield County Police Department responded to the call for service at the call center.  Corporal Ford interviewed Wilson, who stated that Larry Borneisen "was upset because of some correspondence he had received from Capital One and some phone calls about a delinquent account of his; that he had made some statements that—to the effect of he knew where Glen Allen was located and that he would come up there and blow

---

[1]Another customer call was automatically forwarded to Wilson after she terminated the call with Borneisen, but she reported the incident to her supervisor promptly after that next call.

the place up." Corporal Ford told Wilson that it was important that she recall Borneisen's words as accurately as she could, and Wilson "repeated that statement to [Corporal Ford] again, and then she stated that she . . . could not say that was his words word-for-word but that that was what he said."

Corporal Ford prepared a detailed report of his investigation. In his report, Corporal Ford stated that he asked Wilson why Borneisen would mention Capital One's office in Glen Allen, Virginia, when the call center where she worked was in Chester, Virginia. Wilson responded that the Glen Allen office was listed on all letter correspondence that Borneisen would have received from Capital One. Wilson believed that Borneisen did not realize that he was speaking to an employee at a different location.

At the request of his police department, Corporal Ford relayed the results of his investigation to Special Agent Eric Morefield, a bomb technician at a Richmond, Virginia field office of the Federal Bureau of Investigation ("FBI"). Corporal Ford testified that no one at Capital One ever requested that Borneisen be arrested or prosecuted, and no one at Capital One requested Corporal Ford to contact the FBI. In fact, after completing his initial investigation, the only contact that Corporal Ford had with Capital One was when Capital One contacted him

several days later to inform him that the phone call between Borneisen and Wilson had not been recorded.

### D. FBI Investigation

After receiving Corporal Ford's report, Agent Morefield began his own investigation. In determining whether there was probable cause for Borneisen's arrest, Agent Morefield "carefully reviewed the written statement that Ms. Wilson gave to the Chesterfield Police as part of the totality of the circumstances surrounding the threatening phone call from Mr. Borneisen."

Agent Morefield "found no reason to doubt Ms. Wilson's veracity in the statement given to the police, nor did [he] find any grounds to suspect that she intended to give a false report to law enforcement regarding Mr. Borneisen." Agent Morefield specifically noted that there was no evidence of a pre-existing relationship between Wilson and Borneisen and that "private citizens rarely make a random criminal report against a stranger, or give sworn statements to law enforcement against a stranger without facts." Furthermore, Agent Morefield noted that Wilson did not report the call directly to law enforcement and did not complete a police report. She reported the matter to her supervisor as work-related, and her only interaction with law enforcement was her responding to questions by Corporal Ford. Additionally, "it did not appear that Ms. Wilson

6

stood to gain anything by reporting the telephone call to her supervisor at Capital One." Accordingly, Agent Morefield considered the statements provided to the Chesterfield Police Department as a "good-citizen report," a term of art used by law enforcement to describe "reliable reports of information provided to law enforcement made by a private citizen regarding possible criminal activity."

As part of his investigation, Agent Morefield also reviewed Larry Borneisen's criminal history, which spanned three decades between 1976 and 2004. Borneisen's criminal history included, inter alia, several misdemeanor assault convictions, a charge for felony breaking and entering, and two charges for aggravated assault with a firearm. Agent Morefield "considered Mr. Borneisen's history of arrests for violent crimes, continuing over several decades, to contribute to a finding of probable cause for his arrest on suspicion of making a bomb threat to Capital One."

During his investigation, Agent Morefield's only communication with Capital One was a telephone call to determine whether Borneisen's threatening phone call was recorded. Capital One confirmed that the phone call was not recorded. Agent Morefield averred that Capital One "had no other input into [his] investigation" and "did not request that [he] seek Mr. Borneisen's arrest or take any other action of any kind."

7

**E. Borneisen is Charged and Arrested**

On April 14, 2008, Agent Morefield filed a criminal complaint in the U.S. District Court for the Eastern District of Virginia. The complaint and accompanying "Affidavit in Support of Complaint and Arrest Warrant" alleged that Borneisen made a "telephonic bomb threat" in violation of 18 U.S.C. § 844(e).[2] After reviewing the complaint and affidavit, a U.S. magistrate judge found probable cause and issued a warrant for Borneisen's arrest.

On the morning of April 15, 2008, three days after Borneisen's threatening phone call, the FBI arrived at the Borneisens' residence in Tampa, Florida, to effect Larry Borneisen's arrest. When law enforcement arrived, Borneisen came outside and told law enforcement "that they were armed trespassers and that they needed to remove themselves from my property." The officers stated that they had a warrant for Larry Borneisen's arrest, and Borneisen warned them not to "manhandle me" because he had shoulder and back problems. Law enforcement officers arrested Borneisen without incident. In his deposition, Borneisen conceded that the officers "actually . . . were very gentle with me." No one from

---

[2] Section 844(e) provides: "Whoever, through the use of the . . . telephone . . . willfully makes any threat . . . to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both." 18 U.S.C. § 844(e).

8

Capital One was present at the scene or even aware that Larry Borneisen had been arrested.

While effecting Larry Borneisen's arrest, the law enforcement officers also asked Sherry Borneisen for consent to search the Borneisens' home and vehicles. Sherry Borneisen signed a consent-to-search form allowing the officers to search the Borneisens' home and vehicles.

## F. Indictment and Dismissal of Indictment

On May 7, 2008, a grand jury in the Eastern District of Virginia indicted Larry Borneisen for violating 18 U.S.C. § 844(e) by using a telephone to "willfully threaten[] to blow up the Capital One facility . . . by means of fire and explosives."

In September 2008, the United States moved to dismiss the indictment under Federal Rule of Criminal Procedure 48(a).  The district court dismissed the indictment on September 8, 2008.

## G. The Borneisens Sue Capital One

In December 2008, the Borneisens sued Capital One in state court for trespass, invasion of privacy, intentional infliction of emotional distress, assault,

battery, false imprisonment, malicious prosecution, and abuse of process.[3]  In December 2009, Capital One removed the action to federal court.

In January 2011, Capital One moved for summary judgment on all of the claims.  On September 13, 2011, the district court entered a thorough order granting summary judgment for Capital One and against the Borneisens on each of the claims.  On October 13, 2011, the district court entered a final judgment in favor of Capital One and against the Borneisens.  The Borneisens now appeal.

## II. DISCUSSION

On appeal, the Borneisens argue that there was "sufficient evidence . . . to withstand Capital One's motion for summary judgment" as to each of their claims.[4]  We address these claims in turn.

### A. Claims for Trespass, Invasion of Privacy, Assault, Battery, and False Imprisonment

---

[3]The Borneisens also brought a claim for unlawful debt collection in violation of the Florida Consumer Collection Practices Act ("FCCPA"), §§ 559.55 to 559.785, Florida Statutes. Although the district court denied summary judgment on the Borneisens' FCCPA claim, the parties subsequently moved to dismiss the FCCPA claim with prejudice.  The district court dismissed the claim, and it is not before us on appeal.

[4]We review de novo the district court's grant of summary judgment.  Jones v. UPS Ground Freight, 683 F.3d 1283, 1291–92 (11th Cir. 2012).

10

The gravamen of the Borneisens' claims for trespass, invasion of privacy,[5] assault, battery, and false imprisonment is that Wilson falsely reported a bomb threat and that this false report caused the Borneisens' harm at the hands of the law enforcement officers that arrested Borneisen at his home in Florida.

The Borneisens' theory of liability would require a finding that the law enforcement officers—who were serving a valid arrest warrant issued following a probable-cause finding by a U.S. magistrate judge in Virginia—were acting as agents of Capital One. As the district court noted, there is no evidence that any agent of Capital One has ever entered the Borneisens' property, and no one from Capital One was present or participated in the arrest. There is no evidence that anyone from Capital One ever requested that Borneisen be charged or arrested.

Indeed, the only people to enter the Borneisens' property were law enforcement officers, and those officers were acting pursuant to a warrant issued following independent investigations by the local police and the FBI. And the issuance of the warrant precluded any action against the law enforcement officers.[6]

_____

[5]The Borneisens' sole ground for their invasion of privacy claim is that "an invasion of privacy "was substantially certain to result from the false report[s]" of Capital One employees.

[6]See Guin v. City of Riviera Beach, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) (rejecting trespass claim because "law enforcement personnel have a right, under appropriate circumstances, to enter upon private property"); City of St. Petersburg v. Reed, 330 So. 2d 256, 257 (Fla. 2d DCA 1976) (rejecting assault and battery claims against a police officer because, "when an officer has reasonable grounds to believe one has committed a felony, the officer is

11

The law enforcement officers acted independently and without the instigation (or even knowledge) of anyone at Capital One.

Furthermore, the Borneisens' theory of liability would also discourage private citizens from reporting criminal activity to law enforcement. For this reason, Florida recognizes a "privilege of private citizens to provide, without fear of subsequent tort liability, information about suspected criminal activities to law enforcement officials, even where the information was mistaken, and the providing of such information constituted the principal cause of imprisonment." Pokorkny v. First Fed. Savs. & Loan Ass'n of Largo, 382 So. 2d 678, 682 (Fla. 1980). Thus, "under Florida law a private citizen may not be held liable in tort where he neither actually detained another nor instigated the other's arrest by law enforcement officers." Id. "If the private citizen makes an honest, good faith mistake in reporting an incident, the mere fact that his communication to an officer may have caused the victim's arrest does not make him liable when he did not in fact request any detention." Id. To recover for false imprisonment, the Borneisens must also show that Capital One "was personally involved in detaining the victim." Id.

---

entitled to use force which is reasonably necessary to capture him, even to the extent of killing or wounding him"); Jackson v. Navarro, 665 So. 2d 340, 341-42 (Fla. 4th DCA 1995) (rejecting false-imprisonment claim based on officer's arrest pursuant to a valid warrant).

Here, Wilson undoubtedly acted reasonably in reporting Larry Borneisen's threatening phone call to her supervisor, and Capital One undoubtedly acted reasonably in reporting the threat to law enforcement. Although Larry Borneisen disputes that he made a bomb threat specifically, he admitted in his deposition to making the following statement during the phone call: "What, you dumb bitch, . . . you think I don't know where Glen Allen, Virginia is?" Borneisen explained that he knew where Glen Allen was "[b]ecause I grew up there. My first apartment was right next door." In his deposition, Borneisen also admitted asking, "What do I got to do, come up there and put my foot in your ass for you to stop calling me 8, 10 times a day?" The combination of these two statements—one noting his knowledge of where to find Wilson and one threatening to come to the call center to put a "foot in your ass"—were sufficiently menacing to warrant reporting the threatening call to law enforcement irrespective of whether the threat was a "bomb threat" or a veiled threat to beat a Capital One employee. And even if Wilson incorrectly reported a bomb threat instead of Borneisen's personal threat to beat her, no Capital One employee or agent "was personally involved in detaining" Borneisen. See Pokorny, 382 So. 2d at 682. Accordingly, these claims fail.

**B. Intentional Infliction of Emotional Distress**

13

The Borneisens' intentional infliction of emotional distress claim is also based on Wilson's allegedly false report that Borneisen threatened to blow up the Capital One facility.

The Borneisens may recover for intentional infliction of emotional distress only if Capital One's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Johnson v. Thigpen, 788 So. 2d 410, 412–13 (Fla. 1st DCA 2001). "Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. Whether alleged conduct rises to this level is a question of law. Gandy v. Trans World Computer Tech. Grp., 787 So. 2d 116, 119 (Fla. 2d DCA 2001).

We agree with the district court that Capital One did not act outrageously. As a Capital One employee, Wilson notified her supervisor that she had received a threatening phone call, and Capital One notified the police that it had received the call. Even if Larry Borneisen never made a bomb threat, he admitted that he was threatening in the phone call, Wilson perceived Borneisen's words as threatening, and it was therefore eminently reasonable (and certainly not outrageous) for

14

Capital One to report Borneisen's behavior to law enforcement. The Borneisens' claim for intentional infliction of emotional distress fails.

## C. Malicious Prosecution

The Borneisens next argue that the district court erred in rejecting their claim for malicious prosecution. To establish a claim for malicious prosecution, the Borneisens must show that: (1) "an original criminal or civil judicial proceeding against [Larry Borneisen] was commenced or continued"; (2) Capital One "was the legal cause of the original proceeding against [Borneisen] as the defendant in the original proceeding"; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of Borneisen; (4) there was no probable cause for the original proceeding; (5) Capital One acted with malice; and (6) Borneisen suffered damage as a result of the original proceeding. Alterra Healthcare Corp. v. Campbell, 78 So. 3d 595, 602 (Fla. 2d DCA 2011).

The Borneisens' malicious prosecution claim fails because they cannot show that Capital One was the legal cause of Borneisen's prosecution. To make such a showing, Borneisen had to show that Capital One "instigated" the prosecution. Orr v. Belk Lindsey Stores, Inc., 462 So. 2d 112, 114 (Fla. 5th DCA 1985). "The general rule is that if the defendant merely gives a statement to the

proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer or if the officer makes an independent investigation, the defendant is not regarded as having instigated the proceeding." Id.  Nevertheless, if "the defendant's persuasion is the determining factor in inducing the officer's decision or if he gives information which he knew to be false and so unduly influences the authorities, then the defendant may be held liable." Id.

Here, Wilson reported to her supervisor that Borneisen had called in a bomb threat, Wilson's supervisor reported the threat to Capital One's security team, and Capital One's security team reported the threat to the local police, who conducted an independent investigation and then spoke to the FBI.  The FBI then conducted its own independent investigation, which included a review of Borneisen's extensive criminal history, and concluded that there was probable cause for Borneisen's arrest.  After Borneisen's arrest, a grand jury found probable cause to indict him.  At no point did anyone from Capital One contact the FBI or urge Borneisen's prosecution.  Rather, the record contains no evidence that anyone at Capital One even knew the federal government planned to prosecute Borneisen.  Under these circumstances, where Capital One merely relayed Wilson's report of criminal activity (and no one at Capital One had any reason to doubt Wilson's report), Capital One was not the legal cause of Borneisen's prosecution.

16

Additionally, although Larry Borneisen denies making the bomb threat, this denial does not necessarily establish that Wilson knew that her report of a bomb threat was false.  As explained above, Borneisen made, at minimum, veiled threats to Wilson that included an express statement that Borneisen knew where she was located.  There is no evidence in the record showing that Wilson knew any of her statements were false.  But even if Borneisen's denial creates an issue of Wilson's knowledge, there is, importantly, no evidence that Wilson's superiors at Capital One knew that Wilson's report was false and knowingly passed on false information. And there is also no evidence that anyone else at Capital One knowingly gave false information to the authorities.  In sum, Borneisen's prosecution resulted from the independent investigation of an FBI agent and a probable-cause determination by a U.S. magistrate judge in Virginia, not from any action by Capital One.  Accordingly, the malicious prosecution claim fails.

**D. Abuse of Process**

Finally, the Borneisens argue that the district court erred in rejecting their claim for abuse of process.  "A cause of action for abuse of process requires proof that: (1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's

17

action." Thomson McKinnon Sec., Inc. v. Light, 534 So. 2d 757, 760 (Fla. 3d DCA 1988).

As the district court noted, the record is devoid of any evidence that Capital One "made an illegal, improper, or perverted use of process." See id. In fact, there is no evidence that Capital One made any use of process at all. The only "process" that Capital One possibly could have abused were the arrest-warrant proceedings, the grand-jury proceedings, or the criminal proceedings. But there is no evidence that Capital One initiated, supported, or maintained any of those proceedings. The record shows that Capital One was unaware that those proceedings were even occurring. See U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1292 (11th Cir. 2001) (rejecting abuse-of-process claim because there was no evidence that the defendant "controlled or influenced, or even participated in, the decision to seek and execute the warrant").

Furthermore, "abuse of process requires an act constituting the misuse of process after it issues. The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process." Cazares v. Church of Scientology of Cal., Inc., 444 So. 2d 442, 444 (Fla. 5th DCA 1983). The Borneisens failed to present any evidence of any improper action by Capital One after process issued. The alleged misconduct—the allegedly false report of a

18

bomb threat—occurred prior to the commencement of the criminal proceedings.

Accordingly, the Borneisens' abuse-of-process claim fails.

**AFFIRMED.**