# Third District Court of Appeal

**State of Florida**

Opinion filed July 2, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-1338
Lower Tribunal No. 08-43845
_____


**Bank of America Corporation,**
Appellant,

vs.

**Rodolfo Valladares,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Diane V. Ward, Judge.

Liebler, Gonzalez & Portuondo, P.A., and J. Randolph Liebler and Tricia J. Duthiers, for appellant.

Mark G. DiCowden, P.A., and Mark G. DiCowden; Joel S. Perwin, P.A., and Joel S. Perwin; Russell S. Adler( Delray Beach), for appellee.


Before SALTER, FERNANDEZ, and LOGUE, JJ.

LOGUE, J.

Bank of America Corporation appeals a final judgment entered in favor of Rodolfo Valladares. Valladares sued the Bank for personal injuries he suffered at the hands of the police when the Bank mistakenly reported Valladares to be a bank robber. The jury returned a verdict for Valladares finding that the Bank was negligent. Because a person cannot be held liable for simple negligence when contacting the police to report suspected criminal activity, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

On July 3, 2008, Valladares visited a branch of the Bank to cash a check. A teller at the branch mistook Valladares for a bank robber. In the ensuing events, police responded to the scene and ordered all persons in the lobby to lie face down. Valladares assumed a position in which one of his hands was located under his body and out of the view of the officers. When he failed to obey a command to show his hand, an officer used his toe to execute a "foot tap," or kick, to Valladares's head. The officer later explained that he was concerned Valladares might have been concealing a firearm.

Valladares sued the Bank for personal injuries. His complaint contained causes of action for battery, false imprisonment, and negligence. The complaint also requested punitive damages for the battery and false imprisonment claims.

The jury returned the following special verdict: the Bank was negligent; Valladares was not comparatively negligent; the Bank did not cause a battery to be

2

committed on Valladares; and the Bank did not cause Valladares to be falsely imprisoned. The jury awarded the following damages: $3,000 for past medical expenses; $100,000 for future medical expenses; $1,500,000 for past pain and suffering; $1,000,000 for future pain and suffering; and $700,000 in punitive damages. The trial court subsequently entered a final judgment against the Bank.

Throughout the proceedings, citing to <u>Pokorny v. First Federal Savings & Loan Association of Largo</u>, 382 So. 2d 678 (Fla. 1980), the Bank maintained that a party could not be liable in Florida for negligently calling the police to report a crime. The Bank raised this issue in a motion for summary judgment, a motion for directed verdict at the end of Valladares's case, and in its motion to set aside the verdict and judgment. The trial court rejected the Bank's argument in this regard.

## ANALYSIS

On appeal, the Bank argues the following matters justify reversal: (1) the trial court's denial of the motion to set aside the verdict on the negligence cause of action; (2) the trial court's refusal to find the cause of action preempted under federal law; (3) the trial court's refusal to grant an instruction on the police conduct as a superseding cause and to allow the police to be named as a <u>Fabre</u>[1] defendant; (4) the trial court's refusal to set aside the punitive damages because they were

---

[1] <u>Fabre v. Marin</u>, 623 So. 2d 1182 (Fla. 1995), <u>receded from in part on other grounds</u>, <u>Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.</u>, 659 So. 2d 249 (Fla. 1995).

3

requested only for the counts of battery and false imprisonment and the jury found no liability on those counts; and (5) the trial court's denial of the Bank's motion to interview two jurors who denied being sued, although they were allegedly defendants in mortgage foreclosure actions. Without reaching the merits of the other arguments, we address only the first issue because we find it to be dispositive.

The Bank argues the trial court erred in allowing this matter to go to the jury on a theory of simple negligence. On this point, the case presents an issue of everyday concern—under what circumstance is a person who mistakenly reports a possible crime liable if the individual reported was (a) actually innocent and (b) physically injured during the ensuing interaction with the police.

Two legitimate and competing interests are at odds here. On one hand, an individual should be protected from abusive accusations. On the other hand, people must feel free, and indeed must be encouraged, to contact the police to report suspected criminal activity. The Florida Supreme Court described these competing interests as they arise in the context of actions for malicious prosecution as follows:

> The tort of malicious prosecution is premised on the right of an individual to be protected from unjustifiable litigation or unwarranted criminal prosecution. Against this right, the need of society to bring criminals to justice by protecting those who, in good faith, report and legally prosecute persons apparently guilty of crime must be balanced. The latter need, in addition to the public policy in favor of

4

the termination of litigation, dictates the plaintiff's heavy burden of proof.

Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1219 (Fla. 1986) (citation omitted).

In the context of a false arrest that arises from a person's mistaken report of a crime to the police, the Court similarly held that the public policy of Florida is to give wide latitude to an individual reporting a suspected crime to ensure a free flow of information between the people and the police. In this regard, the Court said:

> Prompt and effective law enforcement is directly dependent upon the willingness and cooperation of private persons to assist law enforcement officers in bringing those who violate our criminal laws to justice. Unfortunately, too often in the past witnesses and victims of criminal offenses have failed to report crimes to the proper law enforcement agencies. Private citizens should be encouraged to become interested and involved in bringing the perpetrators of crime to justice and not discouraged under apprehension or fear of recrimination.

Pokorny, 382 So. 2d at 682 (quoting Manis v. Miller, 327 So. 2d 117 (Fla. 2d DCA 1976)); see also Fridovich v. Fridovich, 598 So. 2d 65, 68 (Fla. 2006) ("The fundamental public policy . . . is the need to encourage free and unhindered communication to assist the authorities in detecting and prosecuting perpetrators of criminal activity.").

In light of these declarations by our highest court, it should come as no surprise that Florida law in many different contexts recognizes that a person who

reports a suspected crime to the police has a qualified privilege: the person making the report cannot be liable if the report is based upon a good faith mistake. In other words, the person making the report cannot be liable unless she acted maliciously.

Under the common law of Florida, for example, a mistaken report to the police that leads to an innocent person being prosecuted rises to the tort of malicious prosecution only when it is done with malice. Pokorny, 382 So. 2d at 683. A mistaken report to the police of suspicions of a crime rises to the level of defamation only if done with malice. Fridovich, 598 So. 2d at 69 (adopting a qualified privilege for defamatory statements voluntarily made to police). A mistaken report to the police rises to the level of slander only if it is done with malice. Myers v. Jim Russo Prison Ministries, Inc., 3 So. 3d 411, 412 (Fla. 2d DCA 2009) (recognizing a qualified privilege attaches to slanderous statements made to police). A mistaken report to the police that leads to a false arrest rises to the level of a tort only if the reporting person acted with malice or specifically requested the arrest and detention. Pokorny, 382 So. 2d at 683 ("A plaintiff contending that he had been improperly arrested as the result of negligence in swearing out a warrant must bear the burden of establishing malice and want of probable cause. Mere negligence alone is insufficient.").

These judicial decisions dovetail with many statutes that balance the competing interests by affording individuals qualified immunity for good faith

6

mistakes when reporting wrongful acts to enforcement authorities. Regarding mistaken reports of abuse at nursing homes, for example, Florida law provides:

> Any person who submits or reports a complaint concerning a suspected violation of the resident's rights or concerning services or conditions in a facility or who testifies in any administrative or judicial proceeding arising from such complaint shall have immunity from any criminal or civil liability therefor, unless that person has acted in bad faith, with malicious purpose, or if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party.

§ 400.022(4), Fla. Stat. (2013). The Legislature has enacted a similar qualified immunity for mistaken reports to numerous enforcement agencies.[2]

We found only one authority that cuts against the trend of recognizing a qualified privilege for reporting a crime. In Harris v. Lewis State Bank, 482 So. 2d 1378, 1384 (Fla. 1st DCA 1986), the court held that the trial court erred in dismissing a count of negligently reporting a crime, although it also stated that "[t]he allegations upon which all the counts of appellant's complaint are based include acts beyond the innocent misunderstanding portrayed in Pokorny." To the

---

[2] See § 39.203, Fla. Stat. (2013) (reporting child abuse, abandonment, or neglect); § 397.482, Fla. Stat. (2013) (conveying information in connection with a lawyer assistance program); § 415.1113(10), Fla. Stat. (2013) (providing information to a central abuse hotline); § 429.28(7), Fla. Stat. (2013) (describing services and conditions in assisted care facilities); § 560.123(3)(d), Fla. Stat. (2013) (filing a report on money laundering); § 626.989(4)(c), Fla. Stat. (2013) (furnishing information on insurance fraud); § 937.021(5), Fla. Stat. (2013) (reporting a missing person); § 937.025(3), Fla. Stat. (2013) (reporting missing children); § 943.043(4), Fla. Stat. (2013) (providing information on sexual predators and sexual offenders); § 1003.32(8), Fla. Stat. (2013) (reporting criminal activity on school property); § 1006.147(6), Fla. Stat. (2013) (reporting bullying or harassment).

extent <u>Harris</u> holds that a person can be liable for a negligent, but good faith, mistake in summoning the police, it conflicts with the authority summarized above which governs analogous situations. We respectfully disagree with it.

Admittedly, none of these authorities dealt with the exact cause of action before us: a mistaken report of a crime that results in the person reported receiving personal injuries at the hands of the police. But the same reasons for recognizing a qualified privilege when the injury is wrongful prosecution, arrest, defamation, or slander apply when the injury is physical. The purpose of the standard of conduct is to govern the actions of the person when she is deciding whether to report the suspected crime. If there are differing standards based on the type of harm, a person would be unable to know when she was deciding to contact the police whether she would be liable based on mere negligence or only upon a showing of malice. Without knowing whether she had qualified immunity, she would be chilled from calling the police, undermining the holdings of and frustrating the policy announced by the Supreme Court in <u>Burns</u>, <u>Pokorny</u>, and <u>Fridovich</u>, <u>supra</u>. The fact that a call to the police leads to one type of harm rather than another may, of course, change the amount of damages, but it does not change the standard by which liability for making the call will be judged.

Under Florida law, therefore, an individual's interest to be free from mistaken accusations is balanced against the need to encourage people to report

suspected crimes. A person calling the police to report a possible crime is not liable for a good faith mistake even if the individual reported suffers personal injuries at the hands of the police. Calling the police to report a crime rises to the level of a tort only if the reporter acts maliciously, meaning the reporter either knows the report is false or recklessly disregards whether the report is false.

Having decided that the judgment below must be reversed, we must decide whether the case should be remanded for entry of a judgment for the Bank or for a new trial. Some authorities from outside Florida suggest this matter should be remanded in the interest of fairness to allow Valladares to retry his case on the standard of conduct announced in this decision. See, e.g., La Place v. Sun Ins. Office, Ltd., 298 F. Supp. 764, 767 (D.V.I. 1969) ("Since the above is a new rule in this jurisdiction, and since [defendants] had no prior notice that it would be called upon to show how and why it was prejudiced by anything [plaintiff] did or failed to do, the court, in the interest of fairness, will grant defendants a new trial so that they may comply with the standard announced today."); Brakeman v. Potomac Ins. Co., 371 A.2d 193, 198 (Pa. 1977) (same).

The Florida Supreme Court, however, has rejected such an approach. In Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So. 2d 561 (Fla. 1988), the plaintiff proceeded to trial and obtained a jury verdict over the objections of the defense that the plaintiff's theory

9

was not properly pled. Id. at 562. The Court agreed with the defense and reversed. Recognizing that a reversal might occur, the plaintiff had also argued that, in the event of a reversal, the case should be remanded for a new trial. After all, the plaintiff argued, it should not be penalized simply because it relied upon the trial court's ruling. The Court rejected this argument, explaining that "[b]y 'relying' on the trial court's ruling, counsel always proceeds at the clear risk of reversal if the trial court was wrong." Id. at 563. Having elected to go to trial on a legal theory, a party is not entitled to another trial on a different theory merely because the first theory is later rejected on appeal. Id.; see also Dober v. Worrell, 401 So. 2d 1322, 1324 (Fla. 1981) ("[A] procedure which allows an appellate court to rule on the merits of a trial court judgment and then permits the losing party to amend his initial pleadings to assert matters not previously raised renders a mockery of the 'finality' concept in our system of justice.").

The Court's reasoning is particularly applicable here. Although the general allegations of the complaint claimed the Bank's conduct rose to the level of bad faith, and those allegations were technically incorporated by reference into the negligence count, Valladares persuaded the trial court to allow the negligence count to go to the jury on a theory of simple negligence. Among other occasions, he did this by successfully striking the Bank's proposed jury instructions that would have informed the jury that the Bank could not be liable for a good faith

mistake in its report to the police. Having elected to go to trial on the theory of simple negligence, Valladares ran the "clear risk" that simple negligence was not a proper theory for the relief claimed. For this reason, he is not entitled to a new trial based on another theory.

Reversed and remanded for entry of judgment for the Bank.