[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15319

Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00558-BJD-PDB

JOHNNY L. CLARIDY and JANIE H. CLARIDY,

Plaintiffs-Appellees,

versus

JASON M. GOLUB, in his individual capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 30, 2015)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Defendant Jason Golub, a Lake City police officer, appeals the district court's denial of his motion for summary judgment on the grounds of qualified and state official immunity. Defendant arrested Plaintiff Johnny Claridy in May 2009, after responding to a reported disturbance at the Claridy residence. Following his arrest, Plaintiff was charged with battery of a law enforcement officer, disorderly conduct, and two counts of culpable negligence, all of which charges were ultimately dismissed. He and his wife, Janie Claridy, sued Defendant in his individual capacity, asserting a § 1983 excessive force claim and state law claims for malicious prosecution and loss of consortium.[1] As to the § 1983 claim, Defendant moved for summary judgment on the ground of qualified immunity. As to the state law claims, he moved for summary judgment on the ground of individual immunity under Florida Statute § 768.28(9)(a). Viewing the evidence in the light most favorable to Plaintiff, we agree with the district court that Defendant is not entitled to summary judgment based on either type of immunity. We therefore **AFFIRM** the district court's denial of summary judgment.

## BACKGROUND

---

[1] Janie Claridy's loss of consortium claim is derivative of the other claims asserted in the complaint, and requires no separate analysis. Thus, for simplicity, we refer to Johnny Claridy as "Plaintiff" and to Janie Claridy as Mrs. Claridy.

## I.    Factual Background

On May 16, 2009, Defendant and fellow officer Rebecca Miles responded to a request by animal control authorities to assist with the capture of three pit bull terriers that were running loose outside the Claridy residence and allegedly terrorizing a neighbor, Ronald King.  Plaintiff's wife, Janie Claridy, was the only person home at the time.  The officers spoke to Mrs. Claridy about the dogs, then helped to impound them, and left the scene.

After speaking to the officers, Mrs. Claridy called Plaintiff, who was at a picnic with family members, and told him that the dogs had gotten loose and were being impounded.  Along with his four children and his brother Jeffrey Claridy, Plaintiff returned home to deal with the situation.  By the time they arrived, the dogs had been taken away and no officers were present.  As Plaintiff and Jeffrey were walking around the house trying to determine how the dogs had gotten loose, the neighbor, Ronald King, began arguing with them.  The argument escalated, and King called the police.

Around this time, Defendant received a call over his police radio that there was a disturbance at the Claridy residence, that Plaintiff was threatening his neighbor, and that there might be a gun in Plaintiff's car at the scene.  Defendant returned to the residence, and was the first officer on the scene.  When he arrived, several people were standing on the porch and on the sidewalk in front of the

3

residence.  Plaintiff and Jeffrey were talking, and Jeffrey was also talking loudly on the phone to another family member.  Defendant judged the situation to be hostile and immediately called for back-up.

The parties dispute what happened next.  Construing the facts in the light most favorable to Plaintiff, Defendant exited his vehicle and told Plaintiff and Jeffrey to "calm down."  Jeffrey responded, "Calm down?  We calm [sic].  We're the victims.  He threatened us."  Shortly thereafter, Defendant told Plaintiff he was under arrest for disorderly conduct and screamed, "Get your hands up!"  Plaintiff responded, "Hold up.  What's going on?  We was [sic] just talking.  Where did all of that come from?"  Defendant again instructed Plaintiff to get his hands up, and Plaintiff responded, "Sir, my hands are up."  Mrs. Claridy urged Plaintiff to stay calm and keep his hands up, and also advised Defendant that Plaintiff had just been released from the hospital following knee surgery.

As Defendant continued yelling for Plaintiff to get his hands up, Plaintiff started backing away toward his car, which was parked in front of the Claridy residence.  Defendant followed, until finally Plaintiff reached the car and leaned back against it.  Based on the information he had received on his police radio, Defendant believed there was a gun in the car and that Plaintiff was trying to open the car door to get it.  Defendant deployed his taser, causing Plaintiff to fall

4

forward, striking his knees, stomach, and face on the sidewalk.  Plaintiff then lay immobile on the ground.

Because he was momentarily "out" after the tasing, Plaintiff did not immediately hear Defendant's instruction for him to put his hands behind his back. When Plaintiff awoke, he saw a commotion and heard his children crying.  He told his wife to get the children in the house, and, while still lying face-down on the ground, placed his hands behind his back and submitted to arrest.  Nevertheless, Defendant tased Plaintiff a second time, and then handcuffed him while he was on the ground.  As Plaintiff was unable to stand after falling on his injured knee, Defendant pulled him up and dragged him down the sidewalk by his handcuffs. Defendant's supervisor then called an ambulance, and the paramedic staff removed the taser barbs from Plaintiff and took him to Lake City Medical Center for treatment.

Later that evening, Defendant completed an offense report indicating that Plaintiff had committed the offenses of battery of a law enforcement officer and disorderly conduct.  An attorney from the State Attorney's Office subsequently contacted Defendant and asked if he would agree to a reduction of the battery charge to resisting arrest without violence.  Defendant had no other communications with the attorney regarding the charges.  A warrant was issued and Plaintiff was arrested on the charges of resisting arrest without violence and

disorderly conduct.  The State Attorney then modified the charges again to battery

of a law enforcement officer, disorderly conduct, and two counts of culpable

negligence.  Those charges ultimately were dismissed.

## II.    Procedural History

Plaintiff filed this action in May 2013, asserting a § 1983 excessive force

claim and state malicious prosecution and loss of consortium claims against

Defendant in his individual capacity.[2]  Defendant moved for summary judgment on

the ground of qualified immunity on the federal § 1983 claim, and on the ground of

individual immunity, under Florida Statute § 768.28(9)(a), on the state law claims.

The district court granted qualified immunity as to the first tasing, but otherwise

denied Defendant's motion.[3]  Construing the evidence in favor of Plaintiff, the

court found that Defendant was not entitled to qualified immunity as to the second

tasing, and that he was not entitled to immunity under § 768.28(9)(a) on the state

claims.  Defendant appeals both rulings.

## DISCUSSION

## I.    Standard of Review

**"**We review *de novo* a district court's denial of summary judgment based on

qualified immunity, applying the same legal standards that governed the district

court."  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

---

[2]  Plaintiffs also asserted claims against Lake City.  Those claims are not at issue in this appeal.

[3]  Plaintiff does not contest the district court's ruling as to the first tasing.

6

In conducting our review, we construe the evidence in favor of the plaintiff and decide whether the defendant is entitled to qualified immunity under the plaintiff's version of the facts. *Id.  See also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (noting, in a qualified immunity case, "the importance of drawing inferences in favor of the nonmovant").  We acknowledge that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (citation and quotation marks omitted).  Nevertheless, we view the facts from the plaintiff's perspective because the determinative issue on appeal is "not which facts the parties might be able to prove" but rather, whether "certain given facts" demonstrate a violation of clearly established law. *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009).  The same standard of review applies to the district court's denial of individual immunity under Florida Statute § 768.28(9)(a). *See Cummings v. DeKalb Cnty.*, 24 F.3d 1349, 1353 (11th Cir. 1994).

## II.    <u>Qualified Immunity</u>

Examining first Plaintiff's federal excessive force claim, qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v.*

*Pelzer*, 536 U.S. 730, 739 (2002)). It is undisputed that Defendant was engaged in a discretionary duty when he arrested Plaintiff. It is thus Plaintiff's burden to show that qualified immunity is not appropriate. *Id.* at 995. To meet this burden, Plaintiff must show that Defendant's conduct during the arrest (1) violated a constitutional right that (2) was clearly established at the time of the incident. *See McCullough,* 559 F.3d at 1205. Viewing the evidence in the light most favorable to Plaintiff, both prongs are satisfied here as to the second tasing.

A.      Constitutional Violation

Assuming Plaintiff's factual assertions to be true, the district court held that the second tasing constituted excessive force in violation of the Fourth Amendment. A Fourth Amendment excessive force claim is analyzed under the "objective reasonableness" standard. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (citing *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985)). Reasonableness in this context depends on all the circumstances relevant to an officer's decision to use force and the amount of force used. *Id.* We view the circumstances "from the perspective of a reasonable officer on the scene." *Id.* (quotation marks omitted). And we allow for the fact that officers are often required to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quotation marks omitted).

The district court concluded that Defendant had arguable probable cause to arrest Plaintiff for disorderly conduct, and Plaintiff does not challenge that ruling on appeal. When making an arrest, an officer may constitutionally use such force as is "necessary in the situation at hand." *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) (citation and quotation marks omitted). To determine whether a particular use of force was necessary during an arrest, we consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officer[] or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Assuming, as the district court did, that Plaintiff was lying face-down on the sidewalk, with his hands behind his back and submitting to arrest, all of the relevant factors suggest that Defendant's second use of the taser against him was unreasonable. The crime for which Plaintiff was being arrested was not serious. *Fils*, 647 F.3d at 1288 ("Disorderly conduct is not a serious offense."). Plaintiff did not present a threat to Defendant or anyone else as he lay face-down on the sidewalk with his hands behind his back. Finally, according to Plaintiff, he was not resisting and had submitted to arrest when Defendant discharged his taser a second time. We agree with the district court that the use of the taser under these circumstances would violate the Fourth Amendment. *See id.* at 1289 ("unprovoked force against a non-hostile and non-violent suspect who has not disobeyed

9

instructions violates that suspect's rights under the Fourth Amendment"). *Cf. Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that an officer's use of a taser once against a suspect who was "hostile, belligerent, and uncooperative" during a traffic stop was not excessive).

### B.    Clearly Established Law

To be clearly established, the contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 134 S. Ct. at 2023. "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendant[] that [his] alleged conduct was unconstitutional." *Tolan*, 134 S. Ct. at 1866 (quotation marks omitted and alterations adopted). Fair warning is commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose. *See Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012). However, a case directly on point is not required as long as "existing precedent" placed the "constitutional question beyond debate." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citation and quotation marks omitted). *See also Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) ("judicial precedent with materially identical facts is not essential for the law to be clearly established").

In several decisions issued prior to this incident in May 2009, we held that the "gratuitous use of force when a criminal suspect is not resisting arrest" is unreasonable and violates the Fourth Amendment. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). *See also See Fils*, 647 F.3d at 1292 (holding that officers should have known by 2003 that tasing a non-violent disorderly conduct suspect, who was not resisting arrest and had not threatened anyone, was unreasonable); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (concluding that an officer violated clearly established law when he slammed the plaintiff's head against a car after she was secured); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (denying qualified immunity to officers who slammed the plaintiff's head on the pavement and kicked him even though he was handcuffed and not resisting or struggling with the officers in any way). These cases gave Defendant fair warning that the second tasing, which allegedly occurred while Plaintiff was lying face-down on the sidewalk, complying with Defendant's instruction to put his hands behind his back, and submitting to arrest for, at most, a minor offense, was unconstitutional. Thus, construing the evidence in the light most favorable to Plaintiff, Defendant is not entitled to qualified immunity on the § 1983 claim.

## III.   Individual Immunity Under State Law

A.   Jurisdiction

11

Turning to Plaintiff's state law claims—and the district court's denial of Defendant's motion for summary judgment on those claims—our jurisdiction is limited to appeals from "final decisions" of the district court.  *See* 28 U.S.C. § 1291.  Ordinarily, a district court's denial of a motion for summary judgment does not qualify as a final decision.  *See Schmelz v. Monroe Cnty.*, 954 F.2d 1540, 1542 (11th Cir. 1992) ("Generally, an order denying a motion for summary judgment is not an appealable final order.").  However, the courts have recognized a "small class of interlocutory orders, referred to as 'collateral orders,' which are offshoots of the principal litigation, and which are immediately appealable without regard to the posture of the underlying case."  *Id.* (citing *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541 (1949) (citation and quotation marks omitted)).  An order denying summary judgment on the ground of qualified immunity falls into this category.  *Id.* at 1543 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).  As the Supreme Court has explained, qualified immunity protects public officials from the burden of litigation rather than just liability.  *Mitchell*, 472 U.S. at 526.  This protection is "irretrievably lost" when a district court denies qualified immunity, justifying an immediate appeal prior to the entry of a final judgment.  *Plumhoff*, 134 S. Ct. at 2019.

We have, in several instances, extended the above principle to permit the immediate appeal of an order denying summary judgment on the ground of official

immunity under state law.  *See Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992) (finding jurisdiction to review an order denying a motion for summary judgment based on sovereign immunity under Georgia law).  The critical inquiry in determining the appealability of such an order is whether the state law confers "immunity from suit rather than simply a defense to substantive liability."  *Id.* at 340.  Assuming the former, we have held that an order denying official immunity under state law is immediately appealable.  *Id.* at 341.  *See also Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) (exercising appellate jurisdiction over an order denying "discretionary function" immunity under Alabama law).

We have not yet considered whether an order denying immunity under Florida Statute § 768.28(9)(a) is immediately appealable, but based on the language of the statute and the case law interpreting it, we conclude that it is.[4] Section 768.28(9)(a) states that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort *or named as a party defendant* in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

---

[4]  In *Jones v. Cannon*, 174 F.3d 1271, 1293 (11th Cir. 1999), we held that the denial of sovereign immunity under Florida law was not immediately appealable, because "Florida sovereign immunity is immunity only from liability or damages but not from suit itself."  *Jones* did not consider the immunity granted by § 768.28(9)(a), and thus does not govern our decision here.

13

Fla. Stat. § 768.28(9)(a) (emphasis added).  The Florida Supreme Court recently confirmed that § 768.28(9)(a), as suggested by its plain language, provides immunity from suit rather than simply liability.  *See Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012) ("if a defendant who is entitled to the immunity granted in § 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant").  Thus, under the reasoning of *Griesel* and *Sheth*, we will assume that we have jurisdiction to review the district court's order denying immunity under § 768.28(9)(a) for the state law claims.

B.    Immunity under § 768.28(9)(a)

As quoted above, § 768.28(9)(a) protects an officer from personal liability for acts within the scope of his employment, unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  In determining whether an officer is entitled to summary judgment as a result of the immunity provided by § 768.28(9)(a), the relevant inquiry is "whether a reasonable trier of fact could possibly conclude that the [officer's] conduct was willful and wanton, or would otherwise fall within the exceptions to the statute."  *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. 4th DCA 2011) (citation and quotation marks

14

omitted).  *See also Thompson v. Douds*, 852 So. 2d 299, 310 (Fla. 2d DCA 2003) ("Because the record shows that there are genuine issues of material fact as to whether the officers acted with wanton and willful disregard of [the arrestee's] rights and safety, the trial court's decision to grant summary judgment on the basis of statutory immunity was improper.").

There is sufficient evidence in this case to raise a question of fact as to whether Defendant acted willfully or with malice.  Following Plaintiff's arrest, Defendant completed an offense report indicating that Plaintiff had committed disorderly conduct by violently threatening Defendant as he tried to deescalate the disturbance at the Claridy residence, and that Plaintiff had then committed battery on a law enforcement officer by pushing Defendant with both of his hands. Plaintiff contends that Defendant fabricated critical parts of the report, most importantly the allegation that Plaintiff had threatened and pushed Defendant.  His contention is supported by testimony in the record.

The evidence suggests that the State Attorney relied on Defendant's report in deciding to prosecute Plaintiff, and in defining the charges against him.  Assuming the report was fabricated, a jury might reasonably find that Defendant acted willfully or with malice.  *See Bank of Am. Corp. v. Valladares*, 141 So. 3d 714, 718 (Fla. 3d DCA 2014) (noting that a person who reports a crime acts maliciously when he "knows the report is false or recklessly disregards whether the report is

15

false"); *Lloyd v. Hines*, 474 So. 2d 376, 379 (Fla. 1st DCA 1985) (suggesting that an officer's use of fraud or corrupt means to obtain a warrant gives rise to individual liability under § 768.28(9)(a)).  Accordingly, Defendant is not entitled to summary judgment on the state law claims based on immunity provided by § 768.28(9)(a).

## CONCLUSION

For the reasons discussed above, we agree with the district court that, under Plaintiff's version of the events, Defendant is not entitled to qualified immunity on the federal claim or to individual immunity under Florida Statute § 768.28(9)(a) on the state law claims.  Accordingly, we **AFFIRM** the order of the district court denying summary judgment.